# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Carolina Constructors & Investments, LLC,<br><br>Alleged Debtor(s). | C/A No. 20-02040-HB<br><br>Involuntary Chapter 7<br><br>**ORDER:**<br>1. **DENYING MOTION TO DISMISS INVOLUNTARY PETITION**<br>2. **DENYING REQUEST FOR DAMAGES AGAINST PETITIONING CREDITORS**<br>3. **REGARDING MOTION TO DEPOSIT FUNDS** |

**THIS MATTER** is before the Court for consideration of the *Motion to Dismiss Involuntary Petition and Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Damages Against Petitioning Creditors, or in the Alternative Motion for Abstention pursuant to 11 U.S.C. § 305* filed by Alleged Debtor Carolina Constructors & Investments, LLC ("CCI").[1] Petitioning Creditors Daniel Proper and Rick Farwell objected.[2] CCI argues: (1) Petitioning Creditors are not eligible to file this involuntary petition under 11 U.S.C. § 303(b) because their claims are the subject of a bona fide dispute; (2) Petitioning Creditors are not entitled to relief under § 303(h)(1) because at the time of filing, CCI was paying its debts as they became;[3] (3) Petitioning Creditors filed the Involuntary Petition in bad faith; (4) in the event the involuntary petition is dismissed, CCI should be awarded damages under § 303(i); and (5) if the involuntary petition is not dismissed, abstention is appropriate

---

[1] ECF No. 24, filed May 29, 2020.
[2] ECF No. 28, filed Jun. 12, 2020.
[3] Although not asserted in its Motion to Dismiss, CCI presented this argument at the hearing.

under § 305(a). CCI also filed a *Motion to Deposit Funds*,[4] requesting that $51,200.00 currently held in escrow by counsel for CCI be deposited with the Court pursuant to Fed. R. Bankr. P. 7067 to apply to Petitioning Creditors' claims, less any amounts owed by Petitioning Creditors to CCI.

CCI's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the involuntary petition. *See* Fed. R. Bankr. P. 1011(b) (providing the alleged debtor may contest an involuntary petition and defenses and objections must be presented in the manner prescribed by Fed. R. Civ. P. 12(b)). Fed. R. Civ. P. 12(b)(6) "applies in a contested involuntary situation just as it does generally; the motion challenges the sufficiency of the allegations in the involuntary petition 'may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *In re QDOS, Inc.*, 607 B.R. 338, 345 (B.A.P. 9th Cir. 2019) (quoting *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008)). Pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations contained in the involuntary petition and draw reasonable inferences in the nonmoving party's favor. *See id.* at 346 ("As noted, a Civil Rule 12(b)(6) motion assumes the truth of the allegations in the operative documents, here the involuntary petition."); *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

Pursuant to Fed. R. Civ. P. 12(c), when matters outside the pleadings are considered by the Court, a motion under Fed. R. Civ. P. 12(b)(6) must be treated as a motion for summary judgment under Fed. R. Civ. P. 56.

> Because FRBP 1011(b) requires an alleged debtor to present defenses to
> an involuntary petition "in the manner prescribed by Civil Rule 12," and
> Civil Rule 12(b) requires its enumerated defenses to be presented by motion

---

[4] ECF No. 31, filed Jun. 15, 2020.

> before an answer is filed, the limitations in Official Form 205 commonly result in a motion to dismiss an involuntary petition under Civil Rule 12(b)(6) being converted to a summary judgment motion governed by Civil Rule 56.

*In re EB Holdings II, Inc.*, 589 B.R. 704, 725 n.68 (Bankr. D. Nev. 2017). Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Bankr. P. 1013(a) directs the Court to "determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order." "In effect, Federal Rule of Bankruptcy Procedure 1013(a) recognizes that the interests of both the debtor and the creditors are best served by prompt resolution of the issues raised by an involuntary bankruptcy petition." 9 *Collier on Bankruptcy* ¶ 1013.02 (16th 2020).

CCI's Motion to Dismiss attached the Affidavit of Eric Gutierrez, which included nine exhibits. After Petitioning Creditors objected, the parties filed with the Court the documentary evidence they intended to offer at the hearing, which included six exhibits from CCI and eight exhibits, with subparts, from Petitioning Creditors. Prior to the hearing, the parties participated in some discovery, including CCI's Rule 2004 examinations of Randy Bettilyon and Daniel Proper. At the hearing, Randy Bettilyon, Rick Farwell, Daniel Proper, and Eric Gutierrez testified, exhibits and arguments were presented, and given the range of Motions before the Court, the evidence extended far beyond the scope of Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56. Nevertheless, at the end of the evidence, CCI argued that if its Motion to Dismiss was denied, it must be afforded an opportunity to answer the involuntary petition pursuant to 11 U.S.C. § 303(d).

3

Considering CCI's Motion to Dismiss under the standards of Fed. R. Civ. P. 12(b)(6) and 56, the Motion must be denied, and after considering the evidence, no pending relief requested by CCI will be granted.

## FACTS

1.  CCI is a limited liability company formed in 2014 by Eric Gutierrez (51% owner) and Randy Bettilyon (49% owner). CCI is a contractor and builder of commercial and residential projects in an around Spartanburg County, South Carolina. Its operations have included purchasing, remodeling, and selling residential properties. Bettilyon assumed CCI's recordkeeping responsibilities while Gutierrez worked in the field.

2.  In August 2016, Daniel Proper loaned a total of $15,000.00 to CCI for its business operations. In April 2017, CCI sold a condominium and instead of receiving payment of his loan from the proceeds, Proper instructed CCI to reinvest the funds for its continued operations. The parties memorialized this arrangement in an "Investment Agreement" dated April 20, 2017. The Agreement provides the "investment" of $15,000.00 is for "Construction Projects current and future" and Proper is owed 8% annual interest to be paid at 4% every six months from the date of the contract. There is no maturity date; instead, the Agreement requires Proper "give an advanced notice of 60 days prior to withdrawing the investment in which payment must be made."

3.  In June 2017, Rick Farwell entered into a similar Investment Agreement with CCI for his "investment" loan of $15,000.00, with 8% annual interest to be paid at 4% every six months from the date of the contract. It also does not include a maturity date and requires Farwell "give an advanced notice of 60 days prior to withdrawing the investment in which payment must be made." Farwell has not received any interest

payments and never made a demand for payment of this loan before coming to this Court for relief.

4. On June 26, 2018, Proper loaned an additional $20,000.00 to CCI for the purchase of real property located at 4533 Parris Bridge Road, Lot 83 (the "Parris Bridge Property"). The Loan Agreement provides it is "secured" by an interest in the Parris Bridge Property; however, any such interest was not recorded in any public record. It states that Proper is to receive a single interest payment of $3,000.00. The Agreement does not have a maturity date or deadline for the interest payment, but provides the "[l]oan is repayable within 30 day(s) of the Lender providing the Borrower with written notice of demand."

5. Proper last received an interest payment on his 2017 "investment" in April 2019, and has not received any payment on his 2018 loan. Proper never made a demand for payment of the principal or interest owed on either loan before coming to this Court for relief.

6. On April 17, 2019, Bettilyon formed a new South Carolina limited liability company, Carolina Constructors, LLC ("Carolina Constructors"), to operate as a contractor for commercial projects. Proper is listed as the registered agent for Carolina Constructors. CCI asserts, through the testimony of Gutierrez, that this new company was formed by Bettilyon to compete with CCI and usurp its business opportunities.

7. After learning in June 2019 that Bettilyon formed Carolina Constructors, Gutierrez transferred CCI's assets. In July 2019, Gutierrez transferred three parcels of real property from CCI into his name. This transfer included property located at 220 West Clark Road, Inman, South Carolina (the "West Clark Property") and was in exchange for

5

consideration of $10.00. The West Clark Property is encumbered by a mortgage in favor of First Citizens Bank, personally guaranteed by Gutierrez.

8. Of the three properties transferred, Gutierrez still owns the West Park Road Property. In September 2019, he transferred two of the properties from his name to Hitek Construction, LLC, a company he owns, in exchange for consideration of $10.00.

9. In December 2019, Gutierrez transferred an additional three parcels of real property from CCI to Carolina Developers, LLC, another company he owns individually, in exchange for consideration of $10.00.

10. Gutierrez also transferred CCI's vehicles and equipment to himself for no consideration.

11. Bettilyon and the Petitioning Creditors were not aware that Gutierrez transferred CCI's assets at the time the transfers took place.

12. Gutierrez testified that he transferred these assets to protect CCI until he and Bettilyon could reach an agreement to divide CCI's assets and dissolve the company.

13. Prior to the transfers, Gutierrez discovered Proper was residing in the West Clark Property owned by CCI. After Gutierrez transferred this property to himself, he informed Proper to pay the rent to him personally and not CCI. Proper refused to do so, instead placing the rent payments in escrow. Gutierrez initiated an eviction action and the state court ruled in his favor. An appeal is pending. Proper testified he is holding approximately nine monthly rent payments in escrow until he determines whether he should pay CCI or Gutierrez.

14. On March 6, 2020, CCI sold the Parris Bridge Property to an unrelated party for $264,000.00. Bettilyon testified that he was not involved with this sale and it was

handled by Gutierrez without his knowledge. Sale proceeds were used to pay lienholder First Citizens, other lienholders, and to reduce another line of credit with First Citizens that was not secured by this property. Proper did not receive any funds from this sale.

15.    A balance sheet for CCI drafted by Bettilyon indicates a reduction in some debts from May 4, 2019 to May 4, 2020. The following creditors are listed on the balance sheet with amounts owed as of May 4, 2020: (1) First Citizens (mortgage) - $57,953.61; (2) First Citizens (line of credit) - $40,469.59; (3) Home Depot - $6,478.41; (4) Distribution International - $12,536.74; (5) Westfield Insurance Group - $839.80; (6) BB&T - $4,355.63; (7) Daniel Proper (2017 loan) - $16,200.00; (8) Daniel Proper (2018 loan) - $23,000.00; and (9) Rick Farwell - $18,249.79.

16.    Payments on CCI's lines of credit with First Citizens have been made as recently as June 2020, but Gutierrez made those payments personally as the guarantor. Gutierrez testified that he has also paid property taxes from his personal funds.

17.    A credit card obligation that CCI owes to Home Depot is past due. Gutierrez asserts he was not aware of the outstanding balance because these records were maintained by Bettilyon.

18.    Bettilyon and Petitioning Creditors were friends prior to their association through CCI. In February 2020, Proper and Bettilyon first met with bankruptcy counsel, Randy Skinner, to discuss options to recover CCI's property transferred by Gutierrez and the possibility of initiating an involuntary bankruptcy petition. Bettilyon and Proper contacted Farwell to serve as a petitioning creditor to initiate this case.

19.    On May 4, 2020, Petitioning Creditors filed a Chapter 7 involuntary petition against CCI. Farwell listed his claim in the amount of $15,600.00 and Proper listed two

claims in the amount of $15,600.00 and $23,000.00. An amended involuntary petition was filed on June 12, 2020, to correct the interest calculations for Farwell's claim, increasing it $18,249.79, and one of Proper's claims, increasing it to $16,200.00.

20. Neither Farwell nor Proper have been repaid the principal amount of their loans and each is owed interest. As of the petition date, the amount owed to Farwell is at least $18,000.00, and the amounts owed to Proper are $16,200.00 and $23,000.00.

21. At the time the petition was filed, and at the time of the hearing, CCI has no significant known assets and owes debts of approximately $180,000.00. Other than the sale of the Parris Bridge Property, CCI has not conducted any business in 2020. The evidence indicates the parties have no plans to continue to operate CCI and the only source funds to pay its debts have been contributed by Guiterrez. It is clear that Guiterrez and Bettilyon would like to terminate their professional relationship and operate their separate businesses, but have articulated no plan to wind down the affairs of CCI.

## DISCUSSION AND CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and this Court may enter a final order.

### I. MOTION TO DISMISS

#### A. PETITIONING CREDITORS' CLAIMS ARE NOT IN BONA FIDE DISPUTE

An involuntary bankruptcy case under § 303 is commenced by the filing of a petition under chapter 7 by "three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount[.]" 11 U.S.C. § 303(b)(1); *see also In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 656 (5th Cir. 2014) ("Under § 303(b), an involuntary petition

may be brought only by the 'holder of a claim . . . that is not . . . the subject of a bona fide dispute as to liability or amount." (quoting 11 U.S.C. § 303(b)(1)). For an involuntary petition filed against a debtor with fewer than 12 creditors, only one entity that holds a claim in the aggregate of at least $16,750.00 is required. 11 U.S.C. § 303(b)(2). Petitioning Creditors have the burden of proving their eligibility as petitioners. *In re DC Dev., Inc.*, 572 B.R. 171, 174 (Bankr. D.S.C. 2017).

CCI asserts the involuntary petition is defective and should be dismissed because Petitioning Creditors' claims are in bona fide dispute. "Although courts have not agreed on a precise definition of 'bona fide dispute,' it clearly entails some sort of meritorious, existing conflict." *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 715 (4th Cir. 1993). The Fourth Circuit has adopted the view that "a bona fide dispute requires 'an objective basis for either a factual or a legal dispute as to the validity of [the] debt.'" *In re Byrd*, 357 F.3d 433, 437 (4th Cir. 2004) (internal citations omitted). "[A] bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability." *Id.*; *see also In re Quinto & Wilks, P.C.*, 531 B.R. 594, 605 (Bankr. E.D. Va. 2015) ("A claim is subject to a bona fide dispute when there is a 'genuine issue of a material fact that bears upon the debtor's liability or a meritorious contention as to the applicability of the law to the facts.'" (quoting *In re Caucus Distribs., Inc.*, 106 B.R. 890, 917 (Bankr. E.D. Va. 1989))). "The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists." *Id.* "A counterclaim related to the subject matter of the petitioning creditors' claims may be considered by the bankruptcy court in determining whether there is a bona fide dispute as to the petitioning creditors' claims." *Quinto & Wilks, P.C.*, 531 at 605 (citing *In re Green Hills Dev. Co.*,

9

*LLC*, 741 F.3d 651, 659 (5th Cir. 2014) ("[b]ankruptcy courts routinely consider the existence and character of pending but unresolved litigation as evidence of a bona fide dispute"); *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013) ("Pending litigation over a claim strongly suggests, but does not establish, the existence of a bona fide dispute.")).

Petitioning Creditors have the initial burden of demonstrating a prima facie case that their claims are not subject to a bona fide dispute. *See In re Lisenby Estate Protection Trust u/a dated Feb. 2, 2017*, C/A No. 17-05050-DD, slip op. at 5 (Bankr. D.S.C. Mar. 6, 2018). Once the creditors establish a prima facie case, the burden shifts to the alleged debtor to demonstrate the existence of a bona fide dispute. *Byrd*, 357 F.3d at 439. "Mere contentions, by themselves, are not enough to show the existence of a bona fide dispute; rather, the debtor must produce sufficient evidence demonstrating the existence of a bona fide dispute in order to satisfy its burden." *In re Quantum Cool, LLC*, C/A No. 12-00260-8-SWH, 2013 WL 3733182, at *7 (Bankr. E.D.N.C. July 15, 2013) (citing *Byrd*, 357 F.3d at 439-40).

CCI's alleged counterclaim for rent due from Proper is unrelated to his loans to CCI and does not create a bona fide dispute as to amount or liability of Proper's claims against CCI. Further, Gutierrez informed Proper that the rent should be paid to him personally, and not CCI. Although "[t]he law is well settled that a promissory note payable on demand, with or without interest, is due immediately . . ." *Coleman v. Page's Estate*, 202 S.C. 486, 488-89, 25 S.E.2d 559, 559-60 (1943), the Petitioning Creditors' failure to demand CCI pay their loans does not create factual or legal questions that bear upon CCI's liability to them nor render their claims subject to a bona fide dispute. *See In re Tucker*, C/A No. 5:09-

10

BK-914, 2010 WL 4823917, at *11 (Bankr. N.D. W.Va. Nov. 22, 2010), *aff'd,* C/A No. 5:11CV38, 2011 WL 5192801 (N.D. W.Va. Oct. 31, 2011) *aff'd,* 487 F. App'x 826 (4th Cir. 2012) ("The mere failure of a creditor to make a demand for payment doesn't excuse it from being a debt that is due within the meaning of § 303(h)(1)." (citing *In re West Side Cmty. Hosp.*, 112 B.R. 243, 256 (Bankr. N.D. Ill. 1990)))). The parties' Agreements reflect obligations of CCI upon which no payment has been made and no evidence was presented to call into question the validity or amounts owed to the Petitioning Creditors. Considering the standards of Fed. R. Civ. P. 12(b)(6) and 56, a ruling in favor of CCI is not appropriate. Further, after a review of the evidence, the Court finds the Petitioning Creditors have demonstrated a prima facie case that their claims are not subject to a bona fide dispute under § 303(b).

### B. CCI IS GENERALLY NOT PAYING ITS DEBTS AS THEY BECOME DUE

CCI asserts the involuntary petition is defective and should be dismissed because it is generally paying its debts as they become due. Section 303(h) of the Bankruptcy Code requires the Court, after trial:

> order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if . . . the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount . . .

11 U.S.C. § 303(h)(1). The burden is on the creditors to demonstrate that as of the petition date, the debtor was generally not paying its debts as they became due. *Quinto & Wilks, P.C.*, 531 B.R. at 609 (citing *Caucus Distribs., Inc.*, 106 B.R. at 918); *In re Galaxy Boat Mfg. Co.*, 72 B.R. 200, 203 (Bankr. D.S.C. 1986) ("The 'generally not paying' test is to be applied as of the date of filing of the involuntary petition . . ." (quoting *In re Bishop, Baldwin, Rewald, Dillingham*, 779 F.2d 471, 475 (9th Cir. 1985))). "[T]he determination

11

whether an alleged debtor is generally not paying his or her debts as they become due is a flexible one which admits 'no hard and fast rules,' and requires a careful balancing of both the number and amount of the unpaid debts, in proportional terms, viewed in the light of the alleged debtor's total financial picture." *Id.* (quoting *In re Fischer,* 202 B.R. 341, 350 (E.D.N.Y. 1996)). The following factors may be considered: (1) the timeliness of payments on past due obligations; (2) the amount of debts long overdue; (3) the length of time during which the debtor has been unable to meet large debts; (4) any reduction in debtor's assets; and (5) the debtor's deficit situation. *Tucker*, 2010 WL 4823917, at *10-11 (citing *In re Knoth*, 168 B.R. 311, 316 (Bankr. D.S.C. 1994)). "Although offering guidance, the mechanical test must be employed with regard to any unique circumstances attendant to a particular proceeding." *Id.* at *11 (quoting *Knoth*, 168 B.R. at 316).

In addition to any amounts owed to Petitioning Creditors, CCI's outstanding debts include lines of credit to First Citizens and a Home Depot credit card. The Home Depot credit card is past due, interest payments of approximately $3,000.00 to Farwell are due since December 2017, and interest payments of $1,200.00 to Proper are due since October 2019. There was no evidence that CCI has made any payments to creditors since March 2020 or that it continues to operate in order to generate revenue to pay its debts. The evidence shows that CCI's shareholders have moved on to other businesses and Gutierrez transferred its assets to other companies or himself without satisfying CCI's obligations. Other than the distribution of proceeds from the sale of the Parris Bridge Property, all payments to First Citizens and for property taxes were made by Gutierrez personally since he transferred CCI's assets last year. CCI is a separate and distinct entity from Gutierrez and any other businesses that he owns.

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or summary judgment in CCI's favor is not warranted. Instead the record indicates there is no evidence that CCI itself is paying or remains able to pay its debts as they become due. Therefore, the Court finds that Petitioning Creditors have met the requirements of § 303(h)(1).

### C. THE INVOLUNTARY PETITION WAS NOT FILED IN BAD FAITH

CCI argues that even if the requirements of § 303(b) and (h) are satisfied, this petition should be dismissed because it was filed in bad faith. "A filing is presumed to be in good faith, and the existence of bad faith must be proven by the debtor by a preponderance of the evidence." *Tucker,* 2010 WL 4823917, at *12 (quoting *In re U.S. Optical, Inc.*, 991 F.2d 792 (4th Cir. 1993)). In order to dismiss an involuntary petition on bad faith grounds, the Court must examine "whether a reasonable person would have filed the petition (objective test) as well as the motivations of the petitioner (subjective test)." *Atlas Mach. & Iron Works, Inc.*, 986 F.2d at 716 at 716. No single factor is determinative; rather, the Court must consider the totality of the circumstances. *Tucker*, 2010 WL 4823917, at *12. The majority of courts have concluded that a bankruptcy court may dismiss a **defective** involuntary petition filed in bad faith. *See Atlas Mach. & Iron Works, Inc.,* 986 F.2d at 716. However, only the Third Circuit has determined that an involuntary petition may be dismissed on bad faith grounds even if it otherwise satisfies the requirements of § 303. *See In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328 (3d Cir. 2015); *but see Marciano v. Chapnick (In re Marciano)*, 708 F.3d 1123, 1129 (9th Cir. 2013) (finding that "[t]he Bankruptcy Code does not expressly provide for dismissal of an otherwise proper involuntary petition because of the subjective 'bad faith' of the filers.").

Even if the Fourth Circuit had adopted independent grounds for dismissal of an inventory petition that otherwise meets the requirements of § 303, CCI has failed to

13

demonstrate bad faith here. Although there is friction between Gutierrez, Bettilyon,[5] and Proper, there are separate motivating factors and business reasons for initiating this involuntary petition. Gutierrez transferred CCI's assets previously available to pay its creditors without payment of CCI's outstanding debt. Considering the evidence as a whole, the totality of the circumstances indicates that an unpaid creditor's decision to file an involuntary petition here was reasonable and not motivated solely by any animosity among the parties. CCI has failed to show that the petition should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or that summary judgment should be granted in its favor. Further, the evidence does not support a finding of bad faith.

### D. NO RELIEF PURSUANT TO § 303(I) IS WARRANTED

CCI argues it should be awarded damages under § 303(i) because Petitioning Creditors acted in bad faith. Section 303(i) applies only "[i]f the court dismisses a petition under this section . . ." Therefore, CCI's request for damages must also be denied.

### E. ABSTENTION PURSUANT TO § 305(A) IS NOT APPROPRIATE

Section 305(a) provides "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]" 11 U.S.C. § 305(a). "Abstention under Section 305 is a matter within a bankruptcy court's discretion." *In re Remember Enters., Inc.*, 425 B.R. 757, 761 (Bankr. M.D.N.C. 2010). "A suspension or dismissal under § 305(a) is generally considered to be an extraordinary proceeding, appropriate only in very rare circumstances . . ." *In re Speer*, 522 B.R. 1, 13 (Bankr. D. Conn. 2014).

---

[5] Bettilyon is not one of the Petitioning Creditors.

14

> In determining whether the interests of creditors and the debtor would be better served by dismissal, courts have considered factors such as "fairness, priorities in distribution, capacity for dealing with frauds and preferences, speed, economy, freedom from litigation, the importance of a discharge to the debtor, a pending state proceeding, the small number of remaining creditors, the necessary complexity of the bankruptcy process, efficiency and economy of administration."

*Remember Enters.*, 425 B.R. 757, 761 (Bankr. M.D.N.C. 2010) (quoting *In re Golf Course Mktg. Corp.*, C/A No. 95-76646, slip op. at 4, 1996 WL 33340787 (Bankr. D.S.C. June 16, 1996)).

In its Motion to Dismiss, CCI asserts it is working toward resolution of its issues with Petitioning Creditors and the provisions of the Bankruptcy Code are not necessary to serve the interests of this case. However, the evidence demonstrated a different state of affairs and indicates the interested parties have been unable to work out their issues, which prompted Gutierrez's transfer of CCI's assets and led Petitioning Creditors to file this involuntary petition. Further, CCI has not shown how the creditors would be benefitted by a dismissal or suspension in a way that would provide for a just and equitable resolution of the issues surrounding this case. Rather, if the parties cannot resolve their differences, appointment of a Chapter 7 trustee will allow another party to step in and provide an orderly review of the CCI's assets and liabilities, recover CCI's property, assess the relevance and value of any related disputes among the parties, and liquidate in an efficient and economic fashion. Therefore, CCI's request for the Court to abstain pursuant to § 305(a) must be denied.

## II. DEPOSIT OF FUNDS WITH THE COURT

CCI's Motion to Deposit requests the Court deposit $51,200.00 currently held in escrow pursuant to Fed. R. Bankr. P. 7067, made applicable to this proceeding by Fed. R. Civ. P. 67. Rule 67(a) provides:

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party – on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it.

"Rule 67 is generally applied in cases where the deposited funds are 'in dispute.'" *BCD, LLC v. BMW Mfg. Co., LLC*, C/A No. 6:05-CV-02152-GRA, 2008 WL 11456137, at *1 (D.S.C. June 5, 2008) (citing *Gulf States Util. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1474 (5th Cir. 1987), *modified on other grounds*, 831 F.2d 557 (5th Cir. 1987)). "The purpose of Rule 67 is 'to relieve the depositor of responsibility for a fund in dispute,' such as in an interpleader action." *Id.* (quoting 12 Wright & Miller, *Federal Practice & Procedure* § 2991 (1973)).

Although the Motion was filed by CCI, Guiterrez represented that the $51,200.00 held in escrow is his personal funds. Given the findings in this Order, deposit of these funds appears inappropriate. Should CCI wish to pursue this Motion, additional steps outlined below are necessary.

### III.   STATUS OF THE INVOLUNTARY PETITION

CCI's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied and reviewing the matter pursuant to Fed. R. Civ. P. 56, summary judgment cannot be granted in favor of CCI. Considerable evidence and testimony was offered by Petitioning Creditors and CCI and considered by the Court in its determination, resulting in findings of fact and conclusions of law. However, CCI argued that in the event its Motion to Dismiss be denied, it should be afforded an opportunity to file an answer to the involuntary petition. *QDOS, Inc.*, 607 B.R. at 345 ("In many cases, a bankruptcy court will not be able to dismiss an involuntary case solely on a motion to dismiss. If the petitioning creditors plausibly allege that they have met the standards, the motion must fail, and the involuntary debtor must

16

answer . . . Civil Rule 12(a) provides that where a court denies a Civil Rule 12(b) motion or postpones its determination until trial, the answer must be filed within 14 days of the court's action . . ."). Although the findings of this Order impact many factual issues alleged in the involuntary petition and result in legal determinations, CCI asserts it should be afforded an opportunity to file an answer.

**IT IS, THEREFORE, ORDERED** that CCI's *Motion to Dismiss Involuntary Petition and Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Damages Against Petitioning Creditors, or in the Alternative Motion for Abstention pursuant to 11 U.S.C. § 305* is denied. CCI shall file any answer to the involuntary petition pursuant to § 303(d) and Fed. R. Bankr. P. 1011 within fourteen (14) days from entry of this Order.

**IT IS FURTHER ORDERED** that if CCI wishes to pursue its *Motion to Deposit Funds*, it must file by the same deadline a memorandum explaining how such deposit is consistent with and appropriate given this Order. If CCI fails to do so, the Court will deem the Motion moot and no further action will be taken by the Court.

**FILED BY THE COURT**
**06/26/2020**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 06/26/2020

17